IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

LAURA IBITOYE,

       Plaintiff,

     vs.                             No. 19-2878-SHM-dkv

CREST CORE PROPERTY
MANAGEMENT, LLC,

       Defendants.

_____

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL
and
REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

_____

On December 20, 2019, the plaintiff, Laura Ibitoye ("Ibitoye"), filed a *pro se* complaint against Crest Core Property Management, LLC, ("Crest Core"), alleging various violations of the Tennessee Uniform Residential Landlord and Tenant Act, Tenn. Code Ann. § 66-28-101, *et seq.* ("URLTA"), negligence, breach of contract, infliction of emotional distress, and discrimination. (Compl., ECF No.1.) Before the court is Crest Core's one-page motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure filed on February 18, 2020. (Mot. to Dismiss, ECF No. 12.) Ibitoye did not respond.

Additionally, before the court is a motion to compel filed by Ibitoye on January 27, 2020. (Mot. to Compel, ECF No. 10.) In her motion, Ibitoye seeks an order of the court compelling Crest

Core to engage in mediation. (*Id.*) In light of the following recommendation on Crest Core's motion to dismiss, Ibitoye's motion to compel is denied as moot.

For the following reasons, it is recommended that Crest Core's motion to dismiss pursuant to Rule 12(b)(1) be granted.

## I.   PROPOSED FINDINGS OF FACT

Ibitoye has been a resident of a property managed by Crest Core since July 12, 2019. (Compl. ¶ 23, ECF No. 1.) According to Ibitoye's complaint, she has experienced a multitude of issues with the residence.

On July 12, 2019, Ibitoye noticed mold after receiving the keys to the residence. (*Id.* ¶ 24.) According to Ibitoye, Crest Core told her the mold would be fixed. (*Id.*) Ibitoye additionally states that in October 2019, the property had no heat and she was forced to stay in a hotel on several occasions. (*Id.* ¶ 25.) Ibitoye's daughter allegedly called Crest Core to report the problem with the heat and asked about getting it fixed. (*Id.*) Ibitoye's daughter was allegedly told that Crest Core had no one to "fix such issue." (*Id.*) Ibitoye contends no heat was ever provided. (*Id.*)

On or around November 5, 2019, Ibitoye alleges that she felt dizzy and was suffering from severe headaches. (*Id.*) She called 911, and upon the fire department's arrival, they allegedly discovered a carbon monoxide leak in the home. (*Id.*) Crest Core

2

was cited by the fire department for lack of carbon monoxide detectors and for the leak itself. (*Id.* ¶ 26.) Ibitoye states that Crest Core acknowledged that they had received three citations from the city regarding the carbon monoxide exposure. (*Id.* ¶ 27.)

After the incident, Ibitoye's daughter again went to Crest Core and asked them to move Ibitoye to a different home, which was apparently listed as vacant and move-in ready. (*Id.* ¶ 26.) According to Ibitoye, she and her daughter were given a code by an employee at Crest Core's office to access the new property. (*Id.* ¶ 27.) Ibitoye contends they were told it was okay for her to transfer to the new property. (*Id.*) Ibitoye states that upon arrival to the new property, she and her daughter tried the code four times; however, it was incorrect. (*Id.* ¶ 28.) Ibitoye's daughter called Crest Core and was "laughed at" and put on hold for fifteen minutes before being told that the property was not available to rent. (*Id.*)

On December 12, 2019, Ibitoya discovered a water leak in the closet and more mold. (*Id.* ¶ 29.). According to Ibitoye, she began coughing for several days. (*Id.*) Additionally, Ibitoye claims that she was unable to cook in the home, citing no working electrical outlets for her stove. (*Id.* ¶ 31.) Also, in December 2019, Ibitoye claims that she was informed that the home had a gas problem and that the home was a fire hazard. (*Id.* ¶¶ 32-33.)

Ibitoye contends that she cannot unlock the back door of the property as well. (*Id.* ¶ 37.)

In November and December 2019, Ibitoye spent most of her days staying in a hotel in order to breath and live in a "habitable place." (*Id.* ¶ 30.) Ibitoye contends that Crest Core disregarded the carbon monoxide leak; has failed to provide her with a safe residence; and despite having ample time to repair the issues, the property is still not safe to live in. (*Id.* ¶ 36.) Ibitoye has apparently spent money for repairs without being reimbursed by Crest Core. (*Id.* ¶¶ 36-37.)

Ibitoye also complains that Crest Core has an insurance policy covering the property and that she is required to pay it. (*Id.* ¶ 38.) Ibitoye claims she was never provided a copy of the policy. (*Id.* ¶ 40.) According to her, this is a breach of the lease agreement because paragraph thirty-seven of her lease states that Crest Core is responsible for the payment of insurance on the property. (*Id.* ¶ 42.) Ibitoye suggests that this, among other allegations, is a breach of contract and a violation of Tennessee's URLTA. (*Id.* ¶¶ 127-33.)

Lastly, Ibitoye alleges that she was "disregarded" as a person over the age of sixty-five and discriminated against on the basis of her age and her being a single woman. (*Id.* ¶¶ 2, 41.) Ibitoye alleges that Crest Core informed her that she should not be in any

4

property that has more than one bedroom due to her being a single woman. (*Id.* ¶¶ 2, 99.)

Ibitoye purports to bring claims for discrimination on the basis of her age and income, violations of Tennessee's URLTA, breach of contract, and negligence. (*Id.* ¶¶ 98-138.) Ibitoye also seeks non-economic damages for intentional infliction of emotional distress. (*Id.* ¶¶ 120-126). For relief, Ibitoye seeks declaration that Crest Core's actions, policies, and practices are unlawful; costs paid to hotels while the property was inhabitable; compensatory damages for her mental anguish; damages as a result of Crest Core's negligence; liquidated damages; an order enjoining Crest Core's unlawful acts; and for any other relief deemed just and proper. (*Id.* at Prayer for Relief.)

Relevant to Crest Core's motion to dismiss, Ibitoye states in her complaint that she is a resident of Shelby County, Tennessee. (*Id.* ¶ 6.) According to Ibitoye, Crest Core is located at 4435 Summer Avenue Memphis, Tennessee 38122 and incorporated in the State of Tennessee. (*Id.* ¶ 7.) Ibitoye claims jurisdiction pursuant to 28 U.S.C. § 1332, stating that the matter in controversy exceeds $75,000.00. (*Id.* ¶ 18.) Ibitoye also makes various statements such as she has "federal law claims" and that the court "has supplemental jurisdiction over the related state law claims." (*Id.* ¶¶ 18-19.) Ibitoye additionally states that she has exhausted her administrative remedies, filing charges of

5

discrimination with the EEOC and the New Jersey Division of Civil Rights.  (*Id.* ¶ 21.)

## II.  PROPOSED CONCLUSIONS OF LAW

A.  <u>Legal Standard</u>

A defendant may assert lack of subject-matter jurisdiction as an affirmative defense in a motion to dismiss.  Fed. R. Civ. P. 12(b)(1).  The Sixth Circuit recognizes two varieties of challenges to subject-matter jurisdiction.  *See, e.g.*, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).  Under a facial attack, the allegations in the complaint are taken as true, similar to a Rule 12(b)(6) motion.  *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  Under a factual attack, the court may "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction."  *Carrier Corp.*, 673 F.3d at 440 (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)).  This court construes Crest Core's motion as facial attack on the allegations contained in Ibitoye's complaint.

"A complaint whose factual allegations are patently insubstantial may properly be dismissed by a federal court for want of subject-matter jurisdiction under Rule 12(b)(1)."  61A Am. Jur. 2d Pleading § 499.  "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Beil v.*

*Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 356 (6th Cir. 2008)(citation omitted).  The plaintiff's burden in such case is not onerous; the plaintiff "must show only that the complaint alleges a claim under federal law, and that the claim is 'substantial.'" *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). "Thus, 'the plaintiff can survive the [12(b)(1)] motion to dismiss by showing any arguable basis in law for the claim made.'" *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015)(citing *Musson*, 89 F.3d at 1248).

Subject-matter jurisdiction is a threshold issue which a court must determine before reaching other issues.  *See Moir v. Greater Cleveland Reg'l Transit Autho.*, 895 F.2d 266, 269 (6th Cir. 1990). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Federal courts have subject-matter jurisdiction if the complaint presents a federal question or if there is diversity between the parties.

1.    Federal Question Jurisdiction

Although not addressed by Crest Core in its motion to dismiss, Ibitoye states that she is bringing "federal law claims" in her complaint. (Compl. ¶ 19, ECF No. 1.)  Accordingly, it is necessary to consider whether the court has subject-matter jurisdiction

pursuant to 28 U.S.C. § 1331, the federal question jurisdiction statute.

The enabling statute for federal question jurisdiction, 28 U.S.C. § 1331, provides that district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "In determining whether an action 'arises under' federal law, we are governed by the well-pleaded complaint rule, which requires that a federal question be presented on the face of the complaint." *Mich. S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002)(citations omitted). A case arises under federal law, "when it is apparent from the face of the complaint either that the plaintiff's cause of action was created by federal law[,] or if the plaintiff's claim is based on state law, a substantial, disputed question of federal law is a necessary element of the state cause of action." *Id.* (citations omitted).

No federal question appears on the face of Ibitoye's complaint. Specifically, Ibitoye's complaint may be construed as stating claims for: negligence, breach of contract, infliction of emotional distress, and various violations of Tennessee's URLTA. None of these involve federal law. Although Ibitoye makes various allegations that she was subjected to discrimination on the basis of her age and sex, it is unclear from the face of her complaint

8

whether she is seeking to bring a federal law claim (e.g., a claim pursuant to the Fair Housing Act), a state law claim, or both. Ibitoye's allegation that she filed a claim with the EEOC and with the New Jersey Division on Civil Rights does nothing to provide this court with federal question jurisdiction.  Accordingly, there is no basis for federal question jurisdiction.

2.  Diversity Jurisdiction

In the paragraph headed "Jurisdiction and Venue," Ibitoye states that this court "has jurisdiction of [her] federal law claims pursuant to 28 U.S.C. § 1332[], as this matter in controversy exceeds sums or values above $75,000.00." (Compl. ¶ 18.)  Crest Core argues in its motion to dismiss, that Ibitoye ignores the other requirement imposed by § 1332, that the parties be diverse.  (Mot. to Dismiss, ECF No. 12.)

The enabling statute for diversity jurisdiction, 28 U.S.C. § 1332, provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity of citizenship means that the action is between "citizens of different States."  28 U.S.C. § 1332(a).  A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)(citations omitted).  "To establish

9

diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Johnson v. New York*, 315 F. App'x 394, 395 (3d Dir. 2009)(per curium); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)(finding the complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs., Inc.*, 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009)(finding the complaint and notice of removal did not adequately establish diversity jurisdiction); *Ellis v. Kaye-Kibbey*, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008)(dismissing complaint for failure to adequately allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists).

In her complaint, Ibitoye states that she is a resident of Shelby County, Tennessee. For purposes of diversity jurisdiction, an individual is a citizen of the state in which he or she is domiciled. *See Persinger v. Extendicare Health Servs., Inc.*, 539 F. Supp. 2d 995, 996 (S.D. Ohio 2008). According to the allegations in her complaint, Ibitoye is a domiciled in Tennessee. Ibitoye also alleges that Crest Core's physical address is in Memphis, Tennessee and it is incorporated in the state of Tennessee. A corporation is a "citizen" for purposes of diversity in the state in which it is incorporated and where it has a principal place of business. *Jennings v. LQ Management, LLC*, 2019

10

WL 1033495, at *2 (N.D. Ohio Mar. 5, 2019)(citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006)).  Because Crest Core's state of incorporation is Tennessee, it is considered a citizen of Tennessee for purposes of diversity jurisdiction.  As such, because Ibitoye and Crest Core are citizens of the same state there is not complete diversity.  Additionally, Ibitoye does not allege a principal place of business for Crest Core, which alone makes her complaint insufficient to establish diversity jurisdiction.  *See McGhee v. Hybrid Logistics, Inc.*, 599 F. App'x 259, 259 (6th Cir. 2015)(citing *Vaughn v. Holiday Inn Cleveland Coliseum*, 56 F. App'x 249, 250 (6th Cir. 2003)("Because a corporation is considered a citizen of both its place of incorporation and its principal place of business . . . a plaintiff attempting to invoke diversity jurisdiction when suing a corporation must allege both the corporation's state of incorporation and its principal place of business.").  Accordingly, Ibitoye's claim fails to sufficiently state a basis for diversity jurisdiction.

3.    Supplemental Jurisdiction

Ibitoye states that this court "has supplemental jurisdiction over the related state law claims." (Compl. ¶ 19.)  Because the court lacks subject-matter jurisdiction on the basis of either federal question or diversity jurisdiction, this court also lacks supplemental jurisdiction over any of Ibitoye's claims.  A court has supplemental jurisdiction over claims "which do not fall within

its original jurisdiction but 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Ammons v. Ally Financial, Inc.*, 305 F. Supp. 3d 818, 820 (M.D. Tenn. 2018)(citing 28 U.S.C. § 1367). Because this court lacks original jurisdiction over any of Ibitoye's claims, there are no claims for which the court may exercise supplemental jurisdiction. Accordingly, it is recommended that the court lacks subject-matter jurisdiction over any of Ibitoye's claims.

III. RECOMMENDATION

For the foregoing reasons, it is recommended that Crest Core's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction be granted.

Respectfully submitted, this 17th day of April 2020.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.